THE PEOPLE OF THE STATE OF ILLINOIS for the use of DAVID C. HALL AND ALMA M. HALL

*v.*

PHILIP V. ADMIRE AND HEMAN GOODRICH.

1.  DEATH OF ADMINISTRATOR—*release of his securities.*   Section one hundred and twenty-six of the statute of wills must not receive a construction the effect of which would be to discharge the securities of a delinquent administrator merely as a consequence of his death.   So, when it directs demand to be made on an administrator by a distributee, it must be considered as having

reference to cases where there is an administrator in being upon whom a demand can be made.

2. Such a demand is in most cases a matter of form, intended to protect parties from needless costs, and was not designed to be used by the securities as a shield from liability, after a demand had become impossible.

3. CONSTRUCTION OF STATUTES—*impossibilities not required.* The law will not require impossibilities as a condition to the assertion of acknowledged rights, and when legislatures use language so broad as apparently to lead to such results, courts must say, as they always have said, that legislatures cannot have intended to include those cases in which, by the act of God, a literal obedience to their mandate has become impossible.

4. So, where the heirs of P. declared against the securities of C., who was his administrator, alleging that on final settlement the accounts of C. showed that there was money in his hands belonging. to said estate, that the County Court thereupon ordered him to pay the same to the heirs, specifying the sum due to each, that C. was dead and the money unpaid; and the securities demurred to this declaration: *Held,* that it was good, though C. had never had an administrator, and therefore no demand had ever been made on the administrator of C.

5. REFUNDING BOND—*not always required.* Under sections one hundred and twenty-nine and one hundred and thirty of the statute of wills, the legislature, without defining the cases in which a bond might not be given, still contemplated that cases might arise in which administrators would be compelled to pay legatees or distributees, without having bond and security from them, "to refund the due proportion of any debt which might afterward appear against the estate."

6. So, where an administrator died and no administrator was appointed for him, it was *held,* that as the Probate Court had ordered the deceased administrator in his life-time to pay to the distributees the sum due to each, and they were in no default, and there was no person to whom a bond could be given, in such case no bond was required.

WRIT OF ERROR to the Circuit Court of Greene county; the Hon. D. M. WOODSON, Judge, presiding.

Marshall S. Corey was the administrator of David H. Post. Philip V. Admire and Heman Goodrich were the securities on the administrator's bond, which was dated 20th June, 1856. On the 19th of April, 1864, Corey, as administrator, settled with the Probate Court, showing in his settlement that the debts of the estate were all paid, and that there was a balance in his hands of $1,767.69; and the court thereupon ordered

that he pay the widow one-third of that sum, and each one of the five heirs, $235.69½. This money was never paid. Corey died April 6, 1862, and no administrator was ever appointed for him. Alma M. Hall was one of the five heirs, and with her husband brought an action of debt in this case, for her share according to said order against the securities on the bond of Corey. The defendants demurred to the declaration, the court sustained the demurrer, and this writ of error is now prosecuted thereon.

Messrs. Warren & Pogue, for the plaintiffs in error.

Messrs. Hodges & English, for the defendants in error.

Mr. Justice Lawrence delivered the opinion of the Court:

This was an action of debt brought by the plaintiffs in error, as distributees of the estate of David H. Post, against the defendants in error, as securities upon the bond of Marshall S. Corey, who was administrator of Post. The declaration averred that on the 19th day of April, 1861, Corey exhibited his account for settlement, that he showed in his hands for distribution the sum of $1,767.69, that the County Court thereupon ordered him to pay one-third thereof to the widow, and the sum of $235.69½ to each of the five heirs, and that the same was unpaid. The declaration also averred that Corey had died previous to the commencement of the suit, and that no administration had been granted on his estate. The defendants demurred, the demurrer was sustained, and judgment for costs rendered against the plaintiffs, who thereupon sued out their writ of error.

The defendants urge two objections to the declaration: first, that it fails to aver a demand on the administrator, and, secondly, that it does not aver the tender to the administrator of a refunding bond.

It is true, the one hundred and twenty-sixth section of the statute of wills requires a demand to be made before the administrator is chargeable with a *devastavit*, but that statute must

not receive a construction, the effect of which would be to discharge the securities of a delinquent administrator, merely as a consequence of his death. Such, certainly, could never have been the intention of the legislature. The statute must receive a sensible construction, even though such construction qualifies the universality of its language. When it directs that a demand shall be made upon an administrator by a person entitled, under the order of the court, to money in his hands, it must be considered as having reference to cases where there is an administrator in being upon whom the demand can be made. The demand is, in most cases, a matter of form, intended to protect parties from needless costs, and its requirement by the law was not designed to be used by the securities as a shield from liability after a demand had become impossible. The law is not so unreasonable as to require the performance of impossibilities as a condition to the assertion of acknowledged rights, and when legislatures use language so broad as apparently to lead to such results, the courts must say, as they have always said, that the legislature cannot have intended to include those cases in which, by the act of God, a literal obedience to their mandate has become impossible. " The law itself, and the administration of it," said Sir William Scott, as quoted in Broom's Maxims, page 181, " must yield to that to which every thing must bend—to necessity. The law, in its most positive and peremptory injunctions, is understood to disclaim, as it does in its general aphorisms, all intention of compelling to impossibilities, and the administration of laws must adopt that general exception in the consideration of all particular cases." The objection to the declaration, founded on the failure to make a demand, was not well taken.

The second objection springs from the failure to give a refunding bond. The one hundred and twenty-ninth section of the statute of wills provides that "administrators shall not be compelled to pay legatees or distributees, until bond and security be given by such legatees or distributees to refund the due proportion of any debt which may afterward appear against the estate, and the costs attending the recovery thereof.

Such bond shall be made payable to such executor or adminis-
trator, and shall be for his indemnity, and filed in the court of
probate."

Section one hundred and thirty, after directing what proceed-
ings shall be taken on these bonds in case the necessity of
refunding shall arise, concludes as follows: "And in all cases
where there may be no bond, an action of debt may be main-
tained against such distributee or legatee." This last clause
shows, very clearly, that the legislature, without undertaking
to define the cases in which a bond might not be given, still
contemplated that such cases might arise. In the case before
us, a compliance with the statute has become impossible, by the
act of God. Shall it then be said that these distributees must
lose what is legally their due, and what the Probate Court has
ordered to be paid to them? They are in no default. There is
no person in being to whom the bond can be given. There
is not even an administrator of the deceased administrator. It
is a case clearly within the principle already stated, where, in
the forcible language of the learned judge already quoted,
"the law itself, and the administration of it must yield to that
to which every thing must bend—to necessity." The declara-
tion avers that administration was granted on the 20th of June,
1856, and that the administrator's report, made on the 19th of
April, 1861, showed that all the debts were paid, and that there
was a balance in his hands, of which the sum of $235.69
belonged to the present plaintiff, to whom the court ordered it
to be paid. All creditors are barred by the two years' statute
of limitations, except those under disabilities. Should any of
this class hereafter appear they will have their action of debt
against the distributees under the clause of section one hundred
and thirty already quoted. It cannot be claimed that these
sureties can again be made liable for any money they may pay
under the order of the Probate Court against their principal.
The only persons who can possibly be prejudiced by the want
of a bond, are creditors under disabilities who have not proved
their debts, and the chances are, of course, very slight, that
any such creditors are in existence. Where the report of the

administrator shows the payment of the debts, and a balance in his hands belonging to the distributees, and the court orders its payment, the legislature can never have intended that they should lose their rights, because the death of the administrator renders it impossible to give him a bond. Any other construction of the statute would amount to a denial of justice. We hold the declaration good.

*Reversed and remanded.*