# POWER v. HAMILTON.

(132 N. W. 664.)

**Statutes — construction.**

1. In construing a statute, the courts will give effect to the spirit, rather than the mere letter, of the same, with a view of effectuating the evident intention of the legislature, and to this end the courts, where necessary to carry out the evident legislative intent, will limit general language of an act to the cases contemplated by it. In other words, where the enforcement of general statutory provisions to particular facts clearly not in the contemplation of the legislature would lead to unjust and absurd results, the court is justified and required to limit the application of such general provisions so as not to thwart the legislative will.

**Elections — construction of statute as to vote of nonregistered person.**

2. Applying the above rule of statutory construction, *held*, construing § 738, Rev. Codes 1905, that the provision therein providing that a vote of a nonregistered person shall not be received or counted unless such voter furnishes an oath of a householder and registered voter has no application, where, as in the case at bar, the officers, through an oversight, omit and neglect to meet as a registration board; and when, as in the case at bar, the nonregistered voters, who admittedly are qualified electors, furnish their affidavits, as required by said statute, their votes must be received and counted.

Opinion filed September 8, 1911.

Appeal from District Court, Cavalier county; *W. J. Kneeshaw,* J.

Action by Joseph Power against J. K. Hamilton. Judgment for defendant, and plaintiff appeals.

Affirmed.

*W. A. McIntyre* and *G. M. Price,* for appellant.

*W. B. Dickson* and *Joseph Cleary,* for respondent.

22 N. D.—12.

Fisk, J. This in an election contest, in which the appellant contests the right of respondent to the office of county auditor of Cavalier county for the term which began April 3, 1911. The facts are not in dispute, and, briefly stated, are as follows: At the general election held in said county on November 8, 1910, the parties were opposing candidates for the office aforesaid, and the returns of the canvassing board show that appellant received 1,305 votes and the contestee 1,342 votes for said office. In the first and second wards of the city of Langdon respondent received a plurality of forty-one votes. Notwithstanding the fact that such city possessed the requisite population to require the registration of voters prior to the election, no attempt was made, through an oversight of the proper officers, to comply with the registration laws in such wards prior to such election. There was no meeting or assembly of the registration boards therein for such election, and no lists of the voters were prepared, posted, or certified as required by law. Each of the voters voting therein did, however, prior to casting his vote, furnish to the election officers an affidavit in compliance with § 738 of the Revised Codes; this section being that portion of the registration law giving the right to a nonregistered voter to vote by furnishing a certain affidavit, etc. It was expressly stipulated that each person who voted in such wards at said election was a duly qualified elector therein.

The above facts, with others not deemed necessary to mention, were embraced in stipulations or admitted by the pleadings, but each party reserved the right to object to any of the stipulated facts on the ground of irrelevancy and immateriality, and appellant's counsel interposed certain objections accordingly. Much space is devoted to such objections by counsel, and they disagree as to the issues framed by the pleadings, but we find it unnecessary to consider these questions; for, conceding for the purposes of this case the correctness of the various contentions of the appellant's counsel with reference to these preliminary questions of pleading and evidence, we have no difficulty in reaching the main conclusion arrived at by the learned trial court, viz., that the contest is without merit, and should be dismissed. Appellant's contention on the merits, in effect, is that as a necessary result of the omission of the election officers to meet as a registration board no valid election could be held in said wards; the precise point being, as we understand counsel, that, because of the omission of the registry board to meet,

the section of the statute aforesaid, which, in effect, prescribes that a nonregistered person's vote cannot be received or counted unless such person shall furnish his affidavit stating certain facts, and also prove, by the oath of a householder and registered voter of the precinct, that he knows such person to be a resident therein, etc., could not be complied with, and hence none of such votes could legally be received or counted. In other words, that, inasmuch as the strict letter of such statute could not be complied with by furnishing the oath of a registered voter (as there were none), the entire electorate of such wards must be disfranchised, even in the face of the admitted fact that every person who voted was a duly qualified elector. We cannot yield our assent to such a contention.

The strict letter of the statute will not be permitted to control over its true spirit and the evident legislative intent, especially where such liberal construction would lead to such absurd results. This statute is, no doubt, mandatory, as was held in Fitzmaurice v. Willis, 20 N. D. 372, 127 N. W. 95; but it does not follow from this that a good-faith compliance with its provisions to the utmost extent of the voter's ability will not suffice. In the Fitzmaurice Case no attempt was made to furnish the statutory proof required of nonregistered voters; and, while it was not necessary to the decision, we there stated in effect that, had the voters furnished the statutory affidavit, their votes would and properly should have been counted. As before stated, such affidavit was furnished by each voter in the case at bar, and not only this, but an oath, in corroboration thereof, was also furnished by a householder. This was a sufficient compliance with such law under the circumstances, and, in fact, the only compliance possible. The law does not exact the impossible, and any attempt by the legislature to do so would be both unreasonable and absurd. But the legislature, by the enactment of said statute, attempted no such thing. It is evident that in enacting such statute the legislature did not contemplate a situation where it would be impossible, on account of nonregistration, for the voter to furnish the corroborative oath therein prescribed. The exact reverse is true. It was clearly contemplated that it would always be possible to furnish required proof, in lieu of the registration, of eligibility to vote of all qualified electors. Any other construction would convict the legislators of gross incompetency, if not utter imbecility. The views above expressed find ample

support in the authorities. 25 Am. & Eng. Enc. Law, 608–648, and cases cited. We quote from the text at page 608 as follows: "Language, though apparently general, may be limited in its operation and effect, where it may be gathered from the intent and purpose of the statute that it was designed to apply only to certain persons or things, or was to operate only under certain conditions." In State v. Smiley, 65 Kan. 240, 67 L.R.A. 903, 69 Pac. 199, it was held to be a universal rule of construction that the general words of statutes will be restricted in their application to cases presumptively within the legislative intent. A very good statement of this rule of construction is the following from the supreme court of Illinois: "It is true the 126th section of the statute of wills [Rev. Stat. 1845, chap. 109] requires a demand to be made before the administrator is chargeable with a devastavit, but that statute must not receive a construction the effect of which would be to discharge the securities of a delinquent administrator merely as a consequence of his death. Such certainly could never have been the intention of the legislature. The statutes must receive a sensible construction, even though such construction qualifies the universality of its language. When it directs that a demand shall be made upon an administrator by a person entitled, under the order of the court, to money in his hands, it must be considered as having reference to cases where there is an administrator in being upon whom the demand can be made. . . . The law is not so unreasonable as to require the performance of impossibilities as a condition to the assertion of acknowledged rights, and, when legislatures use language so broad as apparently to lead to such results, the courts must say, as they have always said, that the legislature cannot have intended to include those cases in which by the act of God a literal obedience to their mandate has become impossible. . . . The law in its most positive and peremptory injunctions is understood to disclaim, as it does in its general aphorisms, all intention of compelling to impossibilities, and the administration of laws must adopt that general exception in the consideration of all particular cases." People v. Admire, 39 Ill. 251. In Potter's Dwarr. Stat. p. 138, the same rule is enunciated. We quote: "It happens in two sorts of cases that it is necessary to interpret the laws. One is when we find in a law some obscurity, ambiguity, or other defect of expression; for in this case it is necessary to interpret the law in order to discover its true meaning. And

this kind of interpretation is limited to the expression that it may be known what the law says. The other is when it happens that the sense of a law, how clear, however, it may appear in the words, would lead us to false consequences, and to decisions that would be unjust if the laws were indifferently applied to everything that is contained within the expression. For, in this case, the palpable injustice that would follow from this apparent sense obliges us to discover by some kind of interpretation, not what the law says, but what it means; and to judge by its meaning how far it ought to be extended, and what are the bounds that ought to be set to its sense. . . . If an arbitrary or positive rule is applied to a case which it apparently embraces, and the result is contrary to the intent of the legislator, the rule should not be applied to the case."

But we need not rely on the above authorities, for this court in at least two instances has unqualifiedly given its approval to the same rules of statutory construction. Vermont Loan & T. Co. v. Whithed, 2 N. D. 82, 49 N. W. 318; State ex rel. Flaherty v. Hanson, 16 N. D. 347, 113 N. W. 371. In the first case, Bartholomew, J., in speaking of the power of courts to place a limitation upon the language of the legislature, quoted approvingly from the decisions of other courts as follows: "In the case of State ex rel. Jackson v. Emerson, 39 Mo. 87, the court said: 'In construing an instrument, the true intention of the framers must be arrived at, if possible, and, when necessary, the strict letter of the act, instrument, or law must yield to the manifest intent.' In Whitney v. Whitney, 14 Mass. 92, this language is used: 'Therefore many cases not expressly named may be comprehended within the equity of a statute, the letter of which may be enlarged or restrained according to the true intent of the maker of the law.' The supreme court of Vermont has said: 'Effects and consequences of a construction are to be considered, and, when from a literal interpretation an effect would follow contrary to the whole intent and spirit of the statute, the intent, and not the literal meaning, must be regarded.' Ryegate v. Wardsboro, 30 Vt. 746. In People ex rel. Atty.-Gen. v. Utica Ins. Co. 15 Johns. 358, 8 Am. Dec. 243, it is said: 'Whenever such intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contrary to the letter of the statute. . . . A thing which is within the intention of the maker of the statute, is as much within the statute as if it were within the letter, and

a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers, and such consruction ought to be put upon it as does not suffer it to be eluded.' . . . 'The spirit as well as the letter of a statute must be respected, and, when the whole context of the law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid the intent.' Durousseau v. United States, 6 Cranch, 307, 3 L. ed. 232. 'It is undoubtedly the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject-matter to which it relates, and to restrain its operation within narrower limits than its words would import, if the court is satisfied that the literal meaning of its language would extend to cases which the legislature never designed to embrace in it.' Brewer v. Blougher, 14 Pet. 178, 10 L. ed. 408. 'If it is true that it is the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject-matter to which it relates, there is an equal duty to restrict the meaning of general words when it is found necessary to do so in order to carry out the legislative intent.' Reiche v. Smythe, 13 Wall. 162, 20 L. ed. 566. 'A thing may be within the letter of a statute, and not within its meaning, or within the meaning, though not within the letter.' Atkins v. Fibre Disintegrating Co. 18 Wall. 302, 21 L. ed. 841." See also 36 Cyc. 1109, and cases cited.

Applying these elementary and well-settled rules to the case at bar, we deem it clear that, while the statute aforesaid is mandatory so far as applicable, the portion thereof requiring the furnishing of an oath of a registered voter has no application to a state of facts like those presented in this record, nor was it the legislative intent that it should thus apply.

This conclusion requires an affirmance of the judgment appealed from.

Morgan, Ch. J., took no part in the above decision; Hon. Charles F. Templeton, Judge of the First Judicial District, sitting by request.