[No. 2121.   August 28, 1917].

# BOARD OF EDUCATION OF CITY OF ROSWELL v. CITIZENS' NAT. BANK OF ROSWELL et al.

[Rehearing Denied October 1, 1917.]

## SYLLABUS OF THE COURT.

1. Sections 4901 and 4902, Code 1915, construed. Held, that such sections prescribe the procedure to be followed by

both rural school districts and municipal school districts in the issuance of bonds for the school buildings.    · P. 213

2. In repealing or amending a statute the Legislature may save the old statute for specified purposes by an appropriate saving clause in the repealing or amending act.    P. 220

3. In elections held for the purpose of determining whether a municipal school district shall issue and sell bonds no registration of voters is required.    P. 221

4. The statute (section 1977, Code 1915), which requires notice of an election to be given by publication "ten days before the election," is directory, and such notice is sufficient, even though the first insertion of the same is made more than ten days before the election.    P. 222

5. Under section 4902, Code 1915, the election for voting upon school bonds should be called, held, and conducted in the same manner as school officials are elected, in so far as such procedure is applicable.    P. 223

Appeal from District Court, Chaves County; Richardson, Judge.

Action for specific performance by the Board of Education of the City of Roswell against the Citizens' National Bank of Roswell, N. M., and the First National Bank of Roswell, N. M. Decree for plaintiff and defendants appeal. Affirmed.

W. A. Dunn, of Roswell, for appellants.

The power conferred on Boards of Education by the Constitution and laws of this state is specifically to borrow money for certain purposes, but they are not thereby or otherwise authorized to issue negotiable bonds.

New Mexico Statutes, Sec. 4903; Weil v. Newbern (Tenn.) Ann. Cases 1913, E. 25 and Note page 37; Lanigan v. Gallup, 17 N. M. 627.

Bd. of Education v. Citizens Nat. Bank, 23 N. M. 205

R. D. Bowers, of Roswell, for appellees.

Boards had power to issue bonds under Section 4902. Code 1915.

Lannigan v. Gallup, 131 Pac. 1001; Mays v. Bassett, 125 Pac. 609.

## STATEMENT OF FACTS.

On the 20th day of February, 1917, the board of education of the city of Roswell, this state, passed a resolution setting forth that the school buildings in school district No. 1, Chaves county, were crowded beyond their capacity for conditions of health and effective work, and that additional school buildings and facilities were necessary to properly accommodate the pupils. The resolution further declared that said board was without funds for the construction of additional building facilities, and must therefore resort to the borrowing power of the district, and, further, that said board found and declared that the qualified electors of said district might authorize the issuance of negotiable coupon bonds to the amount of $100,000 for the purpose of erecting additional public school buildings for the use of said district; wherefore it was resolved that there be submitted to the qualified electors of such district for their approval or disapproval the question of issuing bonds in the aggregate amount of $100,000, and that the mayor of the city of Roswell be requested forthwith to call a special election for the purpose of submitting the question of issuing the negotiable coupon bonds of the district in said aggregate amount of $100,000. On the same day the appellee board addressed a request to the mayor and the city council of the city of Roswell, asking that the mayor issue a proclamation for an election to be held on the first Tuesday in April, 1917, at the same time as the regular election of members of said board of education, for the purpose of submitting to the qualified electors of school district No. 1 the following question:

"Shall the board of education of the city of Roswell, N. M., incur an idebtedness and issue its negotiable coupon bonds to the amount of $100,000 due not less than 20 nor more than 30 years after date and redeemable at the pleasure of said district at any time after 10 years from their date at the option of said board of education, and bearing interest at a rate not exceeding 5 per centum per annum, payable semiannually for the purpose of erecting and completing suitable school buildings in and for said school district No. 1."

Pursuant to said request the mayor of Roswell, on March 3, 1917, issued his proclamation of election, submitting to the voters of school district No. 1, Chaves county, the question of issuing bonds, as requested by appellee; said proclamation was published in two daily papers of Roswell, N. M., as follows: In the Roswell Evening News in its issues of March 3, 10, 14, 17, 19, 20, and 24, and in the Roswell Record in its issues of March 3, 10, 17 and 24; the election being called for the 3d day of April, 1917. On said March 3d the city council of Roswell, by resolution, designated the places for holding said election in the various wards of the city and territory attached for school purposes, and appointed the judges and clerks of election which were the same as named and designated in the mayor's proclamation. And on said March 3d the city council passed a resolution appointing boards of registration for the several wards and voting places of said school district, for the purpose of registering the names of all qualified electors entitled to vote at the bond election called for the 3d day of April, 1917.

Registration of voters was made by the boards of registration so appointed, and in accordance with the proclaimination of the mayor an election was held in said school district No. 1, April 3, 1917, and the question submitted to the qualified electors thereof, by ballot, of issuing bonds, the question being submitted in the form embodied in the request to the mayor to call the election, as above set forth. The returns of said election were made to the city clerk of Roswell on April 6, 1917, and the mayor and clerk of said city canvassed such returns, finding that 903 votes were cast in favor of the issuance of bonds and 102 votes against the issuance; and on the same day the mayor and

clerk filed with the appellee board their certificate as to the result of said election, whereupon appellee, on April 13th, following, passed a resolution reciting the several steps theretofore taken for the holding and returns of such election and resolving that the proposition to issue the negotiable coupon bonds of said school district, as proposed, had been adopted and affirmatively voted for by a majority of the qualified electors of school district No. 1, Chaves county, and that said board of education was authorized to issue its bonds accordingly. On the same day the appellee adopted a form for such bonds and for the coupons to be attached thereto, providing that principal and interest should be payable at the banking house of Kountz Bros. in the city of New York, U. S. A., and should bear date June 1, 1917, bearing 5 per cent. interest from date, and otherwise conforming to the requirements and limitations set forth in the ballot submitted to the voters as aforesaid.

On the 14th day of April, 1917, the county treasurer of Chaves county, N. M., caused to be published a notice of the sale of such bonds to take place on the 24th day of May, before the west door of the court house in Roswell, at which time said bonds would be offered to the highest bidder for cash. Said notice was published in four successive issues of a weekly newspaper and once each week for four successive weeks in two daily newspapers published at Roswell, N. M. On said May 24th, at the place named, said bonds were offered for sale and the appellants bid par, subject to a previous understanding with appellee and said county treasurer that such bonds, when issued, would be valid and should be legal and subsisting obligations of school district No. 1, Chaves county.

A written contract specifying the understanding and agreement between the parties was made on the 25th day of May, 1917, signed by both appellee and appellants and by the county treasurer of Chaves county, setting forth that the appellants had bought said bonds at par and how payment therefor should be made. The contract further provided that the purchasers should cause the bonds and cou-

pons to be prepared and printed at their own expense, and that said sale was on condition that the proceedings leading up to the issuance of the bonds should be approved by the attorneys of said purchasers. Both the complaint and answer in the case agree on the proposition that the purpose of having the bonds submitted to attorneys for approval was in order to determine their validity, and the complaint alleges that the purchasers have repudiated their agreement on the pretended ground that said bonds are not valid, and are not enforceable obligations against said school district No. 1.

On the 4th day of August, 1917, the said board of education filed its complaint in the district court of Chaves county against the Citizens' National and First National Banks of Roswell, praying specific performance of the foregoing contract, and in the complaint the foregoing proceedings are fully set forth. On the same day the defendants, appellants here, answered, setting up: First, that the election on the bond issue was not called, notice thereof given and results certified by the plaintiff, appellee here; second, that the proclamation or notice of election was published in one daily newspaper seven times, and in another daily newspaper four times prior to the date of election and subsequent to the calling thereof, and was not otherwise published; and, third, that said bonds were offered for sale through the county treasurer of Chaves county on the understanding and agreement with appellants that the bonds to be issued and delivered would be valid and subsisting obligations of school district No. 1, Chaves county, and pursuant to such understanding and agreement the contract in suit was entered into to enable the appellants to submit the validity of such bonds to a competent attorney. The answer alleges that the proposed bonds would not be valid and subsisting obligations of said school district No. 1, but are worthless and have no value, and that there is a want of consideration for the agreement made to purchase same.

There was a stipulation made and filed by the parties setting forth that the voters of school district No. 1 had

actual notice of the bond election, and setting forth the dates when notices of election were published in the daily papers. Thereupon the plaintiff, appellee here, moved for judgment on the pleadings, and on the 11th day of August, 1917, an opinion was rendered by Hon. Granville A. Richardson, judge of the district court, sustaining the validity of the bonds. A decree was rendered in accordance with his opinion for the specific enforcement of the contract sued on, dated August 13, 1917, from which the defendants in the case have perfected an appeal to this court.

### OPINION OF THE COURT.

ROBERTS, J. (after stating the facts as above). The purpose of this action in the court below was to secure a judicial determination as to whether or not the bonds proposed to be issued by the city of Roswell were authorized by law and issued in accordance therewith. Appellants are willing and desirous of purchasing the bonds and fulfilling their contracts if there is legal authority for their issuance, and the steps required by law to be taken to make such bonds valid and legal obligations of the school district have been complied with. The uncertainty in the matter was occasioned by the adoption of the Code of 1915, which omitted the specific provision theretofore made by the Legislature of 1891 and carried forward into the Compilation of 1897, as sections 1584, 1585, 1586, and 1587. Section 1 of chapter 81 of the Laws of 1905, and section 1542, C. L. 1897, were carried forward into the Code as sections 4901 and 4902. Section 4901, as stated, was originally section 1 of chapter 81, Laws 1905, which was an amendment to section 1541, C. L. 1897. The two sections in question, carried forward into the Code, read as follows:

"Sec. 4901. That school directors shall have power and authority to borrow money for the purpose of erecting and completing school houses by issuing negotiable bonds of the district, to run any period of not less than twenty years nor exceeding thirty years, drawing interest at the rate of not to exceed six per centum per annum, with interest payable semi-annually or annually, at such place as the board of directors issuing the same may direct, which said indebtedness

shall be binding and obligatory on the school districts for the use of which said loan shall be made."

"Sec. 4902. The directors of any school district may submit to the voters of their district at the regular or any special election called for that purpose, the question of issuing bonds, giving the same notice of such meeting as is now required to be given for the election of directors, and the amount proposed to be raised by the sale of such bonds, which question shall be voted upon by the qualified electors of the district, and if a majority of all the votes cast upon that question, be in favor of the issue of such bonds, then said board shall issue bonds to the amount voted, in denominations of not less than twenty-five dollars, nor exceeding five hundred dollars, due not less than twenty, nor more than thirty years after date, and redeemable at the pleasure of the district at any time after ten years which said bonds shall be given in the name of the district issuing them and shall be signed by the president of the board of directors and approved by the county superintendent and be delivered to the county treasurer, taking his receipt therefor; and said county treasurer shall advertise for the sale of said bonds to the highest bidder, in at least four issues of some weekly paper published in his county, or an adjoining county, and shall countersign said bonds when negotiated; the county treasurer shall place the proceeds of such sale of bonds to the credit of the proper district, to be paid out as provided for in the manner of special district tax. The county treasurer shall stand charged upon his official bond with all bonds that may be delivered to him, but any bond or bonds not sold may be returned to the district and the treasurer credited with the same: Provided, that if such bonds are issued for the building of a schoolhouse, that the contractor constructing the same may receive in payment, such bonds at their face value, or at the price offered by the highest bidder: Provided, further, that none of such bonds shall be sold for less than ninety cents on the dollar."

In 1912, the Legislature, by section 1 of chapter 13, Laws 1912, provided as follows:

"That every school district, whether organized under the name of 'school district' or under the name of 'board of education,' shall have power and authority to borrow money for the purpose of erecting and furnishing school buildings and purchasing school grounds, but such power or authority shall exist only when the proposition to create the debt shall have been submitted to the qualified electors of the district, and approved by a majority of those voting thereon. No such school district shall ever become indebted in an amount, including existing indebtedness, exceeding six per centum on the assessed valuation of the taxable property, within the district as shown by the preceding general assessment."

And this section was carried forward into the Code as section 4903. The above provision was evidently made for the purpose of conferring authority upon school districts and boards of education to incur indebtedness for the purposes named. In the case of Lanigan v. Town of Gallup, 17 N. M. 627, 131 Pac. 997, this court held that sections 12 and 13 of article 9 of the state Constitution did not confer the power upon municipalities to contract indebtedness independent of legislative authorization, and it is apparent that the above statute was intended to specifically authorize the creation of an indebtednss for the purposes named. Thus we find in the statute authorization for the creation of an indebtedness, and the question now for determination is whether or not sections 4901 and 4902 provide the method of procedure for the creation of such an indebtedness. Another question to be later considered is whether or not such sections still remain in force in so far as school districts within incorporated cities and towns are concerned.

[1] We will first consider the question as to whether or not these two sections apply to school districts within incorporated cities and towns. In 1891 the Legislature, by chapter 25, Laws 1891, passed an act establishing common schools in the territory of New Mexico and creating the office of superintendent of public instruction. This act made no distinction between school districts within incorporated cities and towns and rural districts. The school affairs within such districts were to be managed by school directors, three in number, and the manner and method of their election were provided for. Sections 28 and 29 of the act in question were the originals of sections 4901 and 4902, Code 1915. Section 28 was amended by the Legislature of 1905, as above stated, and some slight changes were made by the compilers of the Code of 1915 in section 29. Chapter 25 was approved February 12, 1891. The same Legislature, by chapter 77, amended chapter 25 by adding to the same 36 sections. Some of these sections were general sections applying to both rural and municipal school districts. Section 6 of the amendatory act provided

that all cities and towns, then or thereafter organized, should be governed by the provisions of "this act." Section 8 provided for the attaching to such city or town, for school purposes, of adjacent rural territory; section 9 provided that the public schools of each city should be a body corporate, by the name and style of the "Board of education of the city (or town) of ———— of the territory of New Mexico;" section 12 provided for the election at each annual city or town election, of the board of education consisting of two members from each ward, elected by the qualified voters thereof, one of whom should be elected annually, and to hold office for a term of two years. The remaining provisions of the act had to do with the management of schools within incorporated cities and towns and the conduct of the affairs of the board of education. That the territory embraced within the limits of a municipal school district comes within the provisions of a general statute relating to school districts was decided by this court in the case of State National Bank vs. Clayton, not yet reported. (22 N. M. 630; 167 Pac. 20).

Section 29 of the amendatory act of 1891 prescribed the method to be followed by municipal schools in issuing bonds. This section reads as follows:

"Any city or incorporated town in this territory which shall, by the action of its common council, trustees or school directors, have purchased any ground and building or buildings, or may hereafter purchase any ground and building or buildings, or has commenced * * * the erection of any building or buildings for school purposes, or which shall have by its school directors, common council or trustees, contracted any debts for the erection of such buildings, or the purchase of such ground and building or buildings or such school directors trustees or common council, shall not have the necessary means with which to complete such building or buildings, or to pay for the purchase of such ground and building or buildings, or pay such debt, may on filing by the school directors, trustees or common council, of said city or town of a report under oath with the board of education of such city or town, showing the estimated or actual cost of any such ground and building or buildings, or the amount required to complete such building or buildings, * * * or the amount of such debt, it shall be lawful for the board of education to order an election for the issuing of bonds of said school district in said city or town, to an amount to liquidate such pro-

posed indebtedness. And the said board of education are hereby authorized and empowered to issue such bonds in conformity with the requirements, and in like manner that school bonds are issued. And said board of education are authorized and empowered to issue bonds to raise funds for the purchase of school site or sites, or to erect a suitable building or buildings thereon, or to fund any bonded indebtedness for school purposes of such city or town: Provided, that no bonds shall be issued until the question shall be submitted to the people and a majority of the qualified electors who shall vote on the question, at an election called for that purpose, shall have declared by their votes in favor of issuing such bonds. The rate of interest on such bonds shall not exceed six per cent. per annum, payable annually or semi-annually, at such place as may be mentioned upon the face of said bonds, which bonds shall be payable in not less than twenty years, nor more than thirty years from their date, and the board of education is hereby authorized and empowered to sell such bonds at not less than par."

Prior to 1891 there was no separate provision made by the Legislature for municipal school districts; the schools in each district being managed by a board of three directors. The statute, as it stood prior to 1891, authorized school directors to erect necessary public buildings in each school district. Cities and towns, by their common council, had the right to erect all needful public buildings and evidently, under this power, such municipalities had been erecting public school buildings. The law, as it then stood, required the election of three school directors in each voting precinct in the state and the erection of needful school buildings therein. This provision evidently was not suited to the school affairs in incorporated cities and towns where there might be two or more voting precincts and necessity only for one school building. For this reason apparently, cities and towns had proceeded under the general power granted to the board of trustees or common council to erect school buildings. In 1891, when the Legislature enacted the comprehensive school law referred to, it will be observed that in section 29, quoted supra, power to provide necessary school buildings and to issue bonds therefor was conferred upon both the common council or board of trustees and the school directors. The Legislature evidently recognized that city councils or boards of trustees had theretofore purchased ground and erected

building or buildings thereon for school purposes, and, as stated, power was conferred upon them thereafter to do so. The exercise of the power was not in any substantial manner different from that conferred upon school directors in the prior act, except the right of the common council or board of trustees to act in the premises.

In 1915, when the Code was adopted, all the school laws were gathered together under one chapter and evidently, in the judgment of the Legislature, no necessity existed for continuing the power in city councils or boards of trustees to erect public buildings for school purposes and issue bonds, or initiate proceedings for that purpose. The wisdom of the Legislature in this regard is apparent, for under said section 29 there was a divided responsibility in the matter and needless conflict might result; for example, suppose that the board of education should desire the erection of a school building in a certain locality, while the members of the city council should decide that it should be erected elsewhere. The board of education might proceed under its power while the city council at the same time would erect a building desired by it. The continuance of the power in the city council or board of trustees could, of course, accomplish no good purpose, for boards of education in such municipalities were the instrumentalities created by law to manage the school affairs and this board had ample power, under certain restrictions, to erect buildings and issue bonds. For this reason we think that the Legislature, in 1915, when it adopted the Code, dropped out the provisions contained in said section 29 and carried forward only the general provisions, heretofore quoted, making such changes therein as were necessary to the exercise by boards of education of the rights and powers therein contained. As to the proper rule for construing statutes, this court said in the case of Lanigan v. Town of Gallup, 17 N. M. 639, 131 Pac. 1001:

"Every statute or constitutional provision must be construed with reference to the object intended to be accomplished by it, and as already said, in order to ascertain this object, it is proper to consider the occasion and necessity for this enactment. If the purpose and well-ascertained object of a statute

or constitutional provision is inconsistent with the precise words, the latter must yield to the controlling influence of the will of the lawmaking power, resulting from the whole act or the entire Constitution."

In the case mentioned we quote, with approval, an excerpt from the case of Bailey v. State, 163 Ind. 165, 71 N. E. 655:

"When the intent and purpose of the act is thus made clear and consistent, and the act is calculated to effect the obvious purpose, necessary words may be implied, and words limited or enlarged in meaning, and the ordinary meaning of words and consistent, and the act is calculated to effect the obvious holds and makes effective the legislation."

With these rules of construction in mind, it is evident that the Legislature meant that section 4902 of the Code should be a guide for both municipal and rural schools. Bearing in mind that there had been full and ample procedure outlined by sections 1542 and 1584, C. L. 1897, for the issuing of bonds by rural and municipal schools, respectively, and that section 1542, with the modifications already mentioned, was carried forward into the 1915 Code, and section 1584, which was section 29 of the amendatory act of 1891, was entirely omitted therefrom, it is not conceivable that the Legislature intended to leave to rural schools the means of carrying out their power to borrow money as given by section 4903 of the Code, and by the same act to deprive municipal schools of every means of availing themselves of the same borrowing power given in the same manner. To the contrary the reasonable view is that the Legislature saw that they could make provisions for all districts and thereby simplify the system by so making the provision general in its nature. The fact that the very first words of the section mentioned are that the directors of *any* school district may submit to the voters, etc., is persuasive of this view. As stated, the fact that the word "directors" is used means very little. This same word is used at various places in the statutes in such connection that it could not but be held to apply to the directors of both rural and municipal schools. The word means simply the officers who have in charge the affairs of the schools.

As verification of this view we refer to the case of Mayes v. Bassett, 17 N. M. 193, 125 Pac. 609, in which this court was called to construe section 1581, C. L. 1897, which is now section 4893 of the Code. The section referred to was originally enacted in 1891, and was section 26 of chapter 77, to which we have referred. The chapter, as originally passed, was ostensibly for the purpose of governing municipal schools, and such being the case the contention was made that the section could have no reference to rural schools. The act, as we have stated, was an amendment to the former act of that session of the Legislature, and referring to these two acts the court said:

"A careful examination of both acts further discloses that these sections which' are general in their scope or aplication were apparently intended by the Legislature to apply to all common schools; reference to the provisions as' to poll tax and compulsory attendance verifying this statement."

As further verifying these facts reference may be had to section 4899 relating to insurance in which it is said that the board of directors of any school district is empowered to insure buildings. Could it be said that this section applies solely to rural schools, and that there is no provision of law requiring municipal school directors to insure buildings? Likewise, section 4857 of the Code requires the directors of schools in the several districts in the state to take the census, and would it be reasonable to say that because the word "directors" is used that, therefore, the law does not require the census to be taken in municipal districts also? Section 4919 provides that school district property shall not be transferred by school boards except upon the petition by a majority of the electors, and is it to be said that this applies to rural districts and not to municipal or vice versa?

The more reasonable view is that section 4902, as well as all other sections of chapter 99 of the Code, unless specifically limited in their application to either municipal or rural schools, or such limitation is to be implied beyond any reasonable doubt, were intended by the Legislature to be general in their nature and to apply to each school dis-

trict in the state. So, it appearing that in sections 4901, 4902, 4903, 4904, the object of the Legislature was to give power to all school districts to borrow money, to hold elections to authorize the same, and to issue bonds as evidence of such indebtedness, the question is as to whether or not the Legislature has so worded these sections as to provide the means to accomplish the object it had in view. The Legislature has itself, in different ways, recognized the power of municipal school districts to issue bonds, one of these being section 4971 of the Code, in which the board of education is specifically given authority to issue bonds "as now provided by law." Section 4, chapter 79, of the Laws of 1915, gave the same recognition of the bond issuing power as did section 8, chapter 105, Acts 1917, and section 39 of the same chapter, which is an amendment to section 4971 of the Code.

From the above it is clearly apparent that the technical construction limiting the operation of section 4902 to rural schools is simply a play upon words because if the section had been made to read, "The directors or board of education of any school district," etc., there could be no question raised as to the applicability of the section to all common schools in the state; and under the reasonable construction of the statute the word "director" should be held sufficiently comprehensive to include the officers who have charge of any school district. The section says that the bonds shall be signed by the president of the board of directors. The executive officer of a rural school board is denominated a chairman by section 4854, while that of a municipal board is denominated a president by section 4882. Yet it would be unreasonable to adopt such a narrow construction as to say that since the word "president" is used that the section could not apply to rural schools, and yet such a construction would be as reasonable as to say that the section does not apply to municipal schools because the word "directors" is used.

Construing together sections 4901, 4902, and 4903, we have the following: (a) Power to borrow money, with limitation of the amount of the indebtedness, and the re-

quirement that the question shall be voted on; (b) the power to issue bonds and a provision as to the time they shall run, the interest they shall bear, the denominations in which they shall be issued, and how they shall be sold; (c) provision for an election and the notice thereof to be given. As those are all the necessary requirements of any law relating to the issuance of bonds, certainly more could not reasonably be asked. It is therefore clearly apparent that the trial court did not err in holding that appellee had power to issue its negotiable bonds, and did not err in decreeing specific performance of the contract sued on in so far as this objection is concerned.

[2] The next question which logically follows is as to whether or not sections 4901 and 4902 are still in force in so far as municipal school districts are concerned. By chapter 105, Laws 1917, an act was passed relating to school laws, creating county boards of education; prescribing their powers and duties and amending and repealing certain school laws "for the purpose of conforming to the system adopted herein." This chapter enacted a new school system for rural school districts, and made no changes relative to municipal districts. Section 10 of that act provided:

"Nothing contained in this act shall be construed to divest boards of education in incorporated territory of any of the powers possessed by them, immediately preceding the date of the passage of this act."

This was a saving clause designed, evidently, to insure against any provision of the new Code, for rural districts interfering with or in any manner creating confusion in the management and conduct of the affairs of city school districts. By sections 22 and 23 of the act, sections 4901 and 4902, Code 1915, were amended. Clearly the two amended sections were not applicable to the issuance of bonds by municipal school districts, and in the present case no attempt was made to comply with the provisions of the amended sections. The question presented is whether or not the original sections were saved for municipal school districts by the language in section 10. It is contended

by appellant that the amended sections entirely supplanted and superseded the original section for all purposes. No case directly in point on this proposition has been cited by either side, or discovered by any member of the court after diligent research. There are many cases, however, where statutes have been repealed or amended, and the repealing or amended statute has contained a provision to the effect that such repeal or amendment shall not affect any pending case, or worded "a right which has accrued under the former statute." These provisions are legally termed "saving clauses," and their effect is to continue in force and effect the old staute in so far as the rights saved by the new statute are concerned. On principle we cannot see any objection to the Legislature in amending a statute to continue in force and effect the previous statute for certain specified purposes. If it is competent to continue the old statute in force for the purpose of pending suits or to protect accrued rights, it would clearly be competent to continue the old statute in force for purposes not covered by the amended statute. Here the Legislature, by the amended section, was intending to make provisions for rural schools, and did not desire to affect or alter in any manner the provisions of the old section in so far as the same prescribed the procedure for municipal districts. Hence we conclude that the two sections in question are still in force in so far as municipal school districts are concerned, and that the right of said districts to proceed thereunder was not affected by the amended statute, but was specifically saved to such districts.

[3] Some minor questions are presented which have to do with the procedure to be adopted. assuming these two sections to be in full force and effect in so far as municipal districts are concerned. The statute is not clear as to several questions, one of which is as to whether or not registration of voters is essential. In this case, however, this matter becomes of no moment, for it is conceded that all the legal voters in the city registered, and that no one was deprived of the right to vote by reason of the fact that his name had not been registered. Section 4902 in

providing the procedure for voting bonds is silent upon the question of registration. It provides that the question may be submitted at any regular or special election called for that purpose, "giving the same notice of such meeting as is now required to be given for the election of directors." Registration is required in voting for city officers by section 3592, Code 1915. Section 1963, which is the first section of the article on elections, provides:

"It shall not be lawful for any person to vote in the state unless his name shall have been registered as a voter as. provided in this article, unless he shall tender to the judges of election an affidavit," etc.

By section 4869, Code 1915, regulating the election for school directors, it is provided that the election provided for in the two preceding sections shall be held, the returns thereof made and canvassed, and the certificates of election issued in accordance with the laws applicable to the election officers of incorporated cities, except that no registration shall be required. It is thus to be seen that registration of voters is not required in the election of boards of education. Section 1963, which makes it unlawful for a person to vote without being registered, has to do with general, state, and county elections, and has no reference whatever to municipal or school district elections. This being true, the statute is silent upon the question as to whether or not registration of voters is required in elections held to determine the question as to whether or not bonds shall be issued. This being true, it would seemingly follow that in voting upon such questions no additional restrictions, other than were imposed in elections held for school directors, were intended, and this being true, we are compelled to hold that registration of voters in elections upon the question as to whether or not bonds of school districts shall be issued is not required in municipal school district elections.

[4] The next point presented is that the notice of election to be valid must be published the required number of times within ten days next preceding the election. In this case this question becomes of no moment because it is

stipulated that all the voters of the city had actual notice
of the election and of the time and place, and when and
where the same should be held. The question of the ne-
cessity of the notice of election will be discussed later. At
this time we will consider only the point as to whether
the notice was invalid because the first insertion was pub-
lished more than ten days before the election. The provi-
sion requiring publication (section 1977, Code 1915),
reads as follows:

'The county commissioners of each county shall, ten days
before the election, by public proclamation and by publication
in each of the two leading newspapers published in such coun-
ty, give public notice of the object of the election, the offi-
cers to be voted for, the names of the candidates for each of
said offices as the same are on file in the office of the county
clerk and the postoffice address of each of said candidates
and the place where said election is to be held in each pre-
cinct in said county and where there are in such county daily
newspapers published, such notice shall be inserted in daily
newspapers six times prior to the day when the election is to
be held, but when there is no daily newspaper published in
such county, such notice may be inserted in a weekly news-
paper, and where the same is inserted in a weekly newspaper,
the same shall be inserted therein in two issues thereof prior
to the date when such election is to be held, and where the
board of county commissionrs deem it expedient and there is
published in such county a newspaper printed in the Spanish
language they may also cause notice thereof to be inserted in
Spanish in such newspaper."

The reason for the applicability of this section to the
Code will later appear in the general discussion of the
manner and method of the conduct of the election.    It
will be seen that the section required publication ten days
before the election, and that where there is a daily news-
paper that it shall be published six times therein, and if
more than one daily paper is published in such city or town
that it shall be published in both papers. This statute is,
we think, directory and is sufficiently complied with, even
though the first insertion of the notice may have been more
than ten days before the election.

[5]   Considering now, generally, the assignments of
error which have to do with the calling and holding of
the election: It is stated by counsel for appellant that the

election should have been called by the board of education, the judges and clerks appointed by it, and the entire election conducted by said board. Nowhere in the statute is there power conferred on or instruction given to boards of education to call or hold any election whatsoever, either upon special questions or for members of the board, and it cannot be said that the board would have such power unless expressly or impliedly given by law. In order to hold an election it is necessary that notice be given, that officers be appointed to conduct it, and that there be certain qualifications prescribed for voters. The last-named requisite has been provided for in our Constitution, but the others are left to the Legislature. To ferret out the power of holding school elections in cities it is necessary, under existing laws, to consider enactments by several different Legislature. Section 4869 of the Code, which was enacted by the Legislature of 1912, provides:

"The election provided for in the two preceding sections (for members of the board) shall be held, the returns thereof made and canvassed, and the certificates of election issued in accordance with the laws applicable to elections of officers of incorporated cities, except that no registration shall be required."

Searching for the manner of electing said officers we find that section 3591 of the Code provides that the trustees or council of every municipal corporation shall appoint the judges and clerks and name the places in each ward for holding the election, and that the election shall in all respects be held and conducted as are county elections. As to county elections, section 1977 of the Code would be applicable in this case. This section required the county commissioners, by public proclamation and by publication, etc., ten days before the date set, and if there are daily newspapers to insert such notice in such papers six times prior to the date when the election is to be held. Section 4902, Code 1915, allows a bond election to be held at the same time as the regular election of members, which was done in this case, and prescribes that the same notice shall be given. If the same notice of the bond election is to be given as for the election of members, then it must be given

by the same authority. Usage does not always make law; but usage coupled with a reasonable interpretation of an existing statute is a very forceful argument as to what the Legislature intended. It has long been the procedure of cities and towns in this state in the election of members of their school boards that the election be called by the same authorities and held by the same authorities as those who held the election for municipal officers, and this is the reasonable construction of the statute. We think that section 4902, when it says that the directors may submit the question of issuing bonds at any regular or special election, intended that the election should be called and held in the same manner as the election of school officers—if in a rural school, then in the manner provided by section 4852, and if in a city, then in the manner prescribed by section 3591. Simply because the statute says that the directors may submit the question does not mean that boards of education are empowered to call the election or to appoint the officers of the election. In this case the board initiated the proceedings which resulted in the election; in other words, it submitted to the voters of the district, through the machinery or instrumentalities provided by law, the question of issuing bonds. Here the officers of election were appointed by the city council, and the notice of election was given by the mayor of the city, and the returns were made and canvassed by the city clerk and mayor, all as provided for in the case of election of city officers. This we think was the proper procedure under the statute.

For the reasons stated the judgment of the district court will be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.