State ex rel. Walker v. Bridges, 27 N. M. 169.

[No. 2530.    June 13, 1921.]

STATE ex rel. WALKER et al. v. BRIDGES,
Town Clerk.

SYLLABUS BY THE COURT.

1.   Section 13, c. 89, Laws 1917, operates as an amendment pro tanto of section 3592, Code 1915, and authorizes the voting at municipal elections on affidavit.          P. 170

2.   An election held without the appointment of a board of registration and the registration of voters, while irregular, is not wholly void, where voters participating in the election present the affidavit required by law to the judges of election along with their ballots.          P. 173

Appeal from District Court, Roosevelt County; Brice, Judge.

Application by the State, on the relation of R. S. Walker and others, for a writ of mandamus against Silas Bridges, as Town Clerk. From an award of a peremptory writ, respondent appeals.    Affirmed.

·Geo. L. Reese, of Portales, for appellant.

A. W. Hockenhull, of Clovis, for appellees.

OPINION OF THE COURT.

PARKER, J.   This was an action in mandamus in the district court of Roosevelt county, brought by the state, on relation of R. S. Walker and A. E. Stevenson, against Silas Bridges, as town clerk of the town of Elida, to compel the respondent to canvass the returns and certify the result of an election held in said town of Elida on April 6, 1920, for the election of town officials.   The respondent admitted the allegations of the petition, except as to the legality of the election, and alleged that no board of registration had been appointed for said election, and that the election was illegal because of the fact that none of the voters participating in the election had been registered as required by section 3592, Code 1915.   The facts were stipulated.   It was agreed that the election was legal in all respects, excepting that no registration board was appointed

and the voters were not registered. It was agreed that a number of voters were permitted to vote after making affidavit as to their qualifications.

The trial court held that section 3592, Code 1915, was impliedly repealed by chapter 89, Laws 1917, in so far as the absolute requirement in the former section of registration was concerned, and awarded a peremptory writ of mandamus against the respondent.

[1] It becomes necessary to construe section 3592, Code 1915, in connection with chapter 89, Laws 1917, to ascertain the present state of the law in regard to registration of the voters at municipal elections. Section 3592 is a part of chapter 63 of the Laws of 1893. The act was entitled "An act to provide a system of registration for voters of municipalities." The act was special in the sense that it applied solely to municipal elections. The section provides in detail the machinery for registering the qualified voters in municipalities, and contains the provision that "no person whose name is not so registered shall on any account be permitted to vote at such election." In this particular the requirements in regard to qualification of voters differed in municipal elections from that required at general elections. At general elections, while registration is required under sections 1963 and 1974, Code 1915, a qualified voter, whose name has been omitted from the registration list, may have the right to vote upon presenting to the judges of election an affidavit setting up certain specific facts, and corroborated by two qualified voters of the precinct in which he offers to vote. In Board of Education of City of Roswell v. Citizens' National Bank of Roswell, 23 N. M. 205, 222, 167 Pac. 715, we held that section 1963 had reference only to general state and county elections, and had no reference whatever to municipal or school district elections. This opinion was rendered upon the law as it stood prior to the passage

State ex rel. Walker v. Bridges, 27 N. M. 169.

of chapter 89, Laws 1917. The act of 1917 is entitled, "An act relating to elections." It deals almost exclusively with the subject of the preparation and furnishing of ballots, and the method of voting, and brings into this jurisdiction the Australian ballot system.

Section 1 of the act provides that the expense of printing the ballots and cards of instructions for electors shall be borne, in cases of public elections, by the respective counties, and in cases of municipal elections by municipalities. Section 6 of the act provides for the printing of the ballots by the county clerk of each county, and that no ballots other than those so printed shall be cast, counted, or canvassed in any election. Section 7 provides that in municipal elections the duties which devolve upon the county clerk in general elections shall be performed by the municipal clerk. Section 9 provides for the number of ballots to be furnished by the county clerk in general elections and by the municipal clerk in municipal elections. Section 10 provides for the correction of errors in the tickets both by the county clerk or municipal clerk, as the case may be. Section 11 provides for the delivery of the ballots to the judges of election by the county clerk or the municipal clerk, as the case may be. Section 13 provides for the delivery at any election by one of the judges of election of the ballot to the qualified electors. The section further provides:

"Whenever any qualified elector, whose name has not been registered, shall offer to vote and shall produce evidence of his right so to do in the manner prescribed by law, the name of such elector shall be entered upon the registration list or poll books, and the number of the ballot cast by him shall be entered opposite his name in the same manner as herein provided for with reference to the ballots cast by registered voters."

Section 25 of the act provides penalties for illegal voting and registration at any election, and expressly applies to municipal voters, as well as voters

at general elections. Section 27 repeals 16 sections of the election laws, but does not specifically repeal section 3592, Code 1915.

The question then is, Did the Legislature intend by this act to modify section 3592, Code 1915, so that in cases of municipal elections qualified voters might vote upon furnishing the required affidavit, notwithstanding their names had not been registered? Theretofore they could not do so without registration, as we have seen. It is to be observed from the general view of this act that general elections and municipal elections are carried through the act upon the same basis, and are subject to the same requirements throughout. No provision is made in the act in regard to registration as an affirmative proposition, but the registration laws as existing are recognized as applicable to both kinds of election. It is irresistibly to be inferred from a general view of this act that it was the intention of the Legislature to put general elections and municipal elections upon the same basis, and that they should be conducted in the same manner, and that the same restrictions should apply to both, thus creating a homogeneous system. Viewed in this light the portion of section 13 of the act of 1917 above quoted would seem to indicate a legislative intent to apply the principle of the right of a qualified voter to vote, notwithstanding he was not registered, to all elections alike, and to do away with the former distinction contained in section 3592 to the effect that a voter could not vote unless he was registered. It is perhaps unfortunate that the Legislature was not more specific in its language, so that no interpretation would be required; but we believe that the legislative intent is sufficiently manifested to compel us to hold that section 13 operates as an amendment pro tanto of section 3592, Code 1915, and authorizes the voting at municipal elections on affidavit.

State ex rel. Walker v. Bridges, 27 N. M. 169.

In reaching this conclusion we are not unmindful of the well-established rules of statutory construction. We take into consideration the rule that repeals or amendments by implication are not favored; that usually statutes of a special nature are not to be held to be repealed by acts of a general nature; that, where in the later act certain sections of former laws are specifically repealed, the presumption is that all other statutes are intended by the Legislature to remain in force and effect. Notwithstanding all these wise and salutary rules, there always remains the fundamental and controlling principle of construction, viz. that the intent of the Legislature is to be ascertained from the language used, and the connection in which it is employed, and when that intention is ascertained it is always to govern. And in this case, as we have heretofore stated, the language used in the several sections of the act of 1917 points unerringly, as we see it, to a legislative intent to render the election laws both general and municipal a homogeneous whole, and to prescribe the same rules in both instances as to qualifications of voters.

[2] Having arrived at the foregoing conclusion, we are confronted with a much more serious proposition as to whether the election was not entirely illegal. It is to be remembered that there was no attempt at registration, no registration officers were appointed, and no registration lists were prepared. It may be said generally that the registration laws are as much a part of the election laws as other regulations in regard to voting. The statute requires of the various officers throughout the state, including municipalities, that before the holding of the election officers be appointed to prepare registration lists of the legally qualified voters at such election. To ignore such laws, either through negligence, indifference, or fraud, is an open breach of duty on the part of the election officers, and is worthy of

State ex rel. Walker v. Bridges, 27 N. M. 169.

unqualified condemnation. The registration laws are designed to settle beforehand the question as to who is eligible to vote at any given election. All such questions are primarily determined by the registration board, and thus the turmoil and inconvenience of controversies about the qualifications of voters at the polls on election day are eliminated. In many precincts in the state, without a registration list it would be impossible for all of the voters desiring to vote to do so within the time allotted for the holding of the election. As it is, in many precincts it is all that the judges of election can do, even with the exercise of the utmost diligence, to receive the ballots of all the people who desire to vote. It remains true, nevertheless, that the supreme right guaranteed by the Constitution of the state is the right of a citizen to vote at public elections. If through no fault of his, but through the fault of election officers, or those whose duty it is to appoint them, his right to participate in public elections is to be denied, great injustice is done the citizen. If, therefore, the regulations of elections may be reasonably construed to entitle the citizen to vote, it should be done.

The original law on the subject of registration of voters was contained in chapter 26, Laws 1868, and provided as follows:

"Hereafter it shall not be lawful for any person to vote in the territory unless his name shall have been registered as a voter as hereinafter provided." Section 1.

By chapter 64, Laws 1903, this section was amended by adding thereto the following words:

"Unless he shall tender to the judges of election an affidavit, signed and sworn to by himself, and by two qualified voters of the precinct in which he offers to vote, showing him to be a qualified voter of such precinct at such election."

The section as amended now appears as section 1963, Code 1915.

State ex rel. Walker v. Bridges, 27 N. M. 169.

It thus appears that the Legislature in the first instance provided that no one except a registered voter could vote at any election. It afterwards departed from this principle, and allowed qualified voters to vote upon the presentation of the affidavit mentioned in the section. This indicates a clear departure from the former procedure, and the voter is not now to be deprived of the elective franchise by reason of the default of the election officers. This departure is significant, as indicating a legislative intent to free the voter from the restraint upon his franchise occasioned by the carelessness, inadvertence, or fraud of the election officers. Unless prohibited, therefore, by some positive provision of the statute the voter should be held to have the right to vote upon the presentation of the required affidavit, whether there has been any registration of the voters or not. In most of the states the requirement of registration is in much the same form as it was first adopted by the act of 1868 above quoted. Under such circumstances, where the statute provides that unless a voter is registered he cannot on any account vote at all, there must be a registration of the voters simply because of the requirements of the statute. Many cases have so decided. See Richardson v. Blackstone, 135 Md. 530, 109 Atl. 440; People ex rel. Ellsworth v. Laine, 33 Cal. 55; State v. Albin, 44 Mo. 346; Zeller v. Chapman, 54 Mo. 502; People v. Kopplekom, 16 Mich. 343; Nefzger v. Railway Co., 36 Iowa 642; Smith v. Bd of County Com'rs (C. C.), 46 Fed. 340; Pitkin v. McNair, 56 Barb. (N. Y.) 75; Gardina v. Board of Registrars, 160 Ala. 155, 48 South. 788; People v. Earl, 42 Colo. 238, 94 Pac. 294; Bryer v. Sevigney, 42 R. I. 187, 106 Atl. 155; Fish v. Kugel, 63 Colo. 101, 165 Pac. 249; Doerflinger v. Hilmantel, 21 Wis. 574. See, also, Clayton v. Prince et al., 129 Minn. 118, 151 N. W. 911, Ann. Cas. 1916E, 407, and note.

Other cases might be cited, but it would seem to be unnecessary. These cases all turn upon the prop-

osition that, where the statute provides that no unregistered voter may vote, an election held where there has been no registration is void by force of the terms of the statute. This holding is undoubtedly correct. On the other hand, in Power v. Hamilton, 22 N. D. 177, 132 N. W. 664, under a statute similar to ours, and which provided for a non-registered voter to vote by furnishing a certain affidavit, the court held, although there was no registration list made and no attempt was had to comply with the registration laws, that the election was legal in so far as it was participated in by persons who furnished the necessary affidavit as to their qualifications. The court went further in that case than it is necessary for us to go in the case at bar, because in that jurisdiction the statute required the affidavit of the voter to be corroborated by a householder and registered voter of the precinct, which, of ocurse, was impossible literally to have been furnished, there having been no registration list. But in the case at bar the requirement is that the corroboration shall be by two qualified voters of the precinct, whether they are registered or not. See, also, Swain v. McRae, 80 N. C. 111.

In the case at bar, as before seen, a number of the voters voting at the election in question furnished affidavits as to their qualifications in accordance with the requirements of the statute. In the absence of any showing in the record to the contrary, it will be assumed that a majority of the votes cast were thus fortified by the required affidavit, and hence that the successful parties at the election were elected by duly qualified electors. We therefore hold that the election in this case, while exceedingly irregular on account of the absence of registration, was not illegal as a whole on that account.

We appreciate that it is taking a long step to say that a legal election may be held in this state and

the election officers may absolutely ignore the requirements in regard to registration of voters, which requirements, of course, are as much a part of the election law as any other part of it. If an election can be held in a municipality without registration, then a state election may be held without registration, and the requirements of the law absolutely ignored. On the other hand, however, it is always to be remembered that public officials will presumably perform all of their public duties with honesty and fidelity. It is only an occasional case which will ever arise in which election officers will be so negligent or corrupt as to fail to register the voters in any given precinct or voting place. In such case we believe that the interests of the people will be best served by the interpretation of the election laws which we have announced. It follows from all of the foregoing that the judgment of the district court was correct, and should be affirmed; and it is so ordered.

ROBERTS, C. J., and RAYNOLDS, J., concur.