# CHARLES F. RICHARDSON

*vs.*

# GROVER BLACKSTONE.

*Contested Election—Irregularities—Lack of Registration—
Charter of Crisfield.*

A dispute between one claiming to have been elected Mayor of Crisfield by popular vote, in accordance with a certificate issued by the Clerk of the Circuit Court, and one claiming such office by appointment from the City Council, is not a "contest" within a provision of the Charter making the Council going out of office the judges of the election or qualification of the Mayor "in case of contest." p. 536

An election, authorized by law, having been held, and a certificate of election having been issued by the Clerk of the Circuit Court, the person named in such certificate as having been elected is entitled to the office pending the decision of any contest or other direct attack, and mandamus is the proper method of obtaining possession of such office. p. 537

Questions as to the return by the registration officer, the posting of the return, the names of the judges of election, to what persons certificates of candidacy were issued, and the circumstances of the issuance of such certificates, concern merely irregularities in the method of conducting the election, as distinguished from the legality of the holding of the election, and can consequently not be inquired into in a mandamus proceeding instituted by one to whom a certificate of election has been issued by the Clerk of the Circuit Court. p. 538

Article XVI of the Constitution, known as the Referendum, does not apply to acts relative to towns and cities other than Baltimore, and consequently such acts, though not emergency acts, can be made to take effect as of the date of their passage. p. 540

The Charter of Crisfield providing in detail for the registration of voters prior to an election under said charter, and making registration essential to the right to vote, an election not preceded by any registration was a nullity, there being no person entitled to vote thereat.                              pp. 538-541

While courts will not, in a mandamus proceeding, go back of a certificate of election to inquire into irregularities in the manner of holding an election, they can inquire whether an election has been held under authority of law.                              p. 541

*Decided January 14th, 1920.*

Appeal from the Circuit Court for Somerset County (PATTISON, C. J., BAILEY and DUER, JJ.).

The cause was argued before BOYD, C. J., BURKE, URNER, STOCKBRIDGE and ADKINS, JJ.

*Isaac Lobe Straus,* with whom was *Hooper S. Miles* on the brief, for the appellant.

*Thomas S. Hodson,* with whom was *Clarence P. Lankford* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This case grows out of an election held, or attempted to be held, on June 5th (the first Wednesday in June), 1918, for the election of a Mayor and one councilman of Crisfield.

The Circuit Court for Somerset County had previously, on May 23rd, 1918, passed an order, in the mandamus proceeding of *David Saltz* v. *Mayor and Council of Crisfield,* "that a permanent writ of mandamus issue directed to the said Mayor and Council of Crisfield commanding them and each of them to take, or cause to be taken, such preliminary

steps as may and shall be necessary and perform such acts, or cause them to be performed, as are necessary and proper to hold a city election on June 5th, 1918, for the election of a Mayor in place of Charles F. Richardson, and a councilman in place of J. B. Nelson, whose terms are about to expire under and by virtue of the statutes now existing, as well as of those existing on June 1st, 1918, etc." On the same day the writ was issued, and served upon the Mayor and two of the councilmen. On June 1st, 1918, an order for appeal was filed and two days later a petition of the Mayor and Council asking the Court to fix the penalty of an appeal bond. According to the docket entries certified by the clerk in the *Saltz case,* nothing further appears to have been done in that case.

On June 10th, 1918, a certificate of election was issued by the clerk of the Circuit Court for Somerset County in which it is stated

> "that it appears from the returns of the judges of an election held in the City of Crisfield on the 5th day of June, 1918, being the first Wednesday in June of said year, for the purpose of electing a Mayor of the City of Crisfield, that Grover Blackstone received the largest number of votes for said office, and I further certify that the said Grover Blackstone was at said election elected Mayor of the City of Crisfield."

On July 6th, 1918, the petition for mandamus in this case was filed by the said Grover Blackstone, in which he alleges that he is a taxpayer, resident and qualified voter in the City of Crisfield and has been so for twelve months preceding the 5th day of June, 1918; that on the first Wednesday in June he was duly elected Mayor of Crisfield; that on the third Monday in June after said election he as Mayor and Saltz as councilman met as provided by law, took the oath of office required for qualification and entered upon the discharge of their duties as Mayor and councilman; that other members of the Council refused to attend said meeting; that an alleged

City Government has been set up by another Mayor and Council, composed of Charles F. Richardson, a citizen of Crisfield who claims to be Mayor, and William E. Ward, A. B. Riggan and Loric B. Quinn, all of whom claim to have been elected and qualified for these respective offices as councilmen at an alleged meeting of said pretended body held on June 12th, 1918, by the votes of J. Bunyon Nelson, A. B. Riggan and John F. Bedsworth, after the terms of Charles F. Richardson as Mayor, J. Bunyon Nelson and John T. Bedsworth (who at that meeting resigned as councilman) as councilmen had expired, at which meeting J. Bunyon Nelson and John T. Bedsworth were present and voting, and at which meeting neither Blackstone nor Saltz were present; that said pretended meeting, proceedings, election and qualification were each and all illegal and void and none of said persons pretending to be elected and qualified at said meeting were in fact so elected and qualified; that after said election on June 5th, no contest was instituted by any persons voted for at said election, for either of said offices against your petitioner for his seat as Mayor, or David Saltz for his seat as councilman; that since the election on June 5th, 1918, the said Richardson and said pretended councilman have ignored the legally elected Mayor and the legally elected councilman, and have contumaciously attempted and assumed after said election to be the governing power of the city and to fill vacancies; that among other business it is alleged and published by their authority that they have ordered the clerk of the Council to withhold from the petitioner and the legal Council of Crisfield all the books, papers, documents, seal, etc., belonging to the city and in his keeping and to which the petitioner as Mayor had right of free ingress and inspection; that said pretended body declared the election on June 5th, 1918, held under the direction of themselves and of the Court, to be illegal and void and have put forth a claim that they, themselves, are the legal governing body of Crisfield until the election in 1920; that they are still collecting money

from the citizens of Crisfield for taxes and water rent and
other sources of revenue, and disbursing the same; that by
virtue of the ·Charter of Crisfield, the petitioner is entitled
to the full control of all officers of the city, who should re-
ceive their orders from the Mayor, but owing to the attitude
of said Richardson and his claim publicly and continually
made to be the Mayor, the said officers either refuse or hesi-
tate to obey the orders of said petitioner and are taking
orders and receiving pay from said Richardson and the other
persons conspiring with him to usurp the City Government
and to perpetuate their official existence and authority con-
trary to law; that said situation is manifestly to the great
injury and discredit of said city and a serious invasion of
the official rights of your petitioner.

The prayer of the petition is that a writ of mandamus may
be issued directed to the said Charles F. Richardson, requir-
ing him to surrender to petitioner the office of Mayor of Cris-
field.

A plea to the jurisdiction was filed to which a demurrer
was filed and sustained. Whereupon answer was filed which
was later amended. In said answer and amendment, the
defendant Richardson denies that plaintiff is a taxpayer or
was at any time within the period of twelve months preceding
the 5th day of June, 1918; avers that he is and has been
for a considerable period of time a resident of the State of
Virginia where he is engaged permanently in business, and
has established his residence; denies that said Blackstone
was duly elected Mayor of Crisfield on June 5th, 1918; that
Saltz was elected councilman, or that the term of Nelson as
councilman had expired; that the certificate of the clerk of
the Circuit Court· is a valid and lawful certificate; or that
the election referred to in said certificate ever took place so
as to elect said Blackstone to the office of Mayor of Crisfield
in accordance with law, and asserts that said certificate is
nugatory; denies that said petitioner had any right or author-
ity to do any act or take any proceedings as Mayor of Cris-

field or to take the oath of office or that any one was author-
ized to administer any oath of office to him with respect to
the office of Mayor; avers that the defendant Richardson is
the Mayor of Crisfield and is lawfully entitled to said office
and to exercise all the duties thereof, and that William E.
Ward, A. B. Riggan and Lorie C. Quinn have all been duly
elected and qualified as councilmen of Crisfield and are each
entitled to be and hold the office of councilmen and to per-
form the duties thereof.  The answer proceeds to state how
each of the councilmen was elected.  It alleges that there
were no other candidates at said election on June 5th, 1918,
except Blackstone and Saltz, and that there was no one to
contest said alleged election against said Blackstone, but that
no contest was necessary inasmuch as he was not lawfully
elected to the office he pretends to be entitled to and was
never eligible; the answer denies that defendant is pretend-
ing to be Mayor of Crisfield and avers that he is the lawful
Mayor thereof; denies that he and the councilmen named
have set up a "second" City Government in opposition to
that lately elected by the people as alleged in the petition,
and avers that there is no Mayor and no council of Crisfield
other than himself as Mayor, and Messrs. Riggan, Ward and
Quinn as councilmen; the answer further denies that defend-
ant has directed the clerk of the council to withhold from
said petitioner and from Saltz, all the books, papers, docu-
ments, seal, etc., belonging to the city, but says he is informed
that the Council of Crisfield passed a resolution so instruct-
ing the clerk; admits that defendant claims that he is the
legal Mayor of Crisfield, having been elected Mayor on the
first Wednesday of June, 1916, for a term of two years, and
upon the expiration of his term having been appointed to
succeed himself upon the 12th day of June, 1918, by the
Council of Crisfield; avers that said alleged election of June
5th, 1918, at which said Blackstone pretended to have been
elected Mayor, was held without the registration prescribed
and required by the Act of 1918, Chapter 529, as necessary

and indispensable to said election, and also that there was no legally qualified or constituted election nor any voters or persons qualified or authorized by law to take part in said election as provided for by law, and that the persons who voted and took part therein were unauthorized to do so; that there was not any return by the registration officer of his registration book with an alphabetical list of persons, registered or rejected, as required by said act; that the persons who acted as judges of election did not possess the qualifications required by the Charter, and were not authorized, qualified or empowered by law to hold and conduct said election. The answer further denies the jurisdiction of the Court.

To the first paragraph of this answer a replication was filed and a demurrer to the rest of the answer, and the demurrer being overruled, issue was joined on the remaining paragraphs of the answer.

The case was tried by the Court without a jury, testimony was taken and on June 21st, 1918, the writ of mandamus ordered to be issued. From which order an appeal was prayed, and on the filing of a bond, execution was stayed pending the appeal.

The point most dwelt on by appellant is that raised by his plea to the jurisdiction, a demurrer to which was sustained by the lower Court. Section 62 of the Charter of Crisfield as amended by the Act of 1916, Chapter 458, provides as follows:

> "The Council going out of office are hereby made the judges of the election or qualification of the Mayor and members of the Council, in case of a contest, but an appeal from their decision to the Circuit Court for Somerset County may be taken, within ten days after a decision is rendered, by any person aggrieved thereby or having any interest therein."

It is earnestly contended by appellant that this case is a "contest" within the meaning of the section above quoted, and that the claims of the appellant here should have been

submitted to and tried by "the Council going out of office," and that the Circuit Court for Somerset County has only an appellate jurisdiction in such cases. With this contention we do not agree.

A certificate of election having been issued by the clerk of the Court, the appellant (assuming there was an election authorized by law) was entitled to the office to which he was returned elected, pending the decision of any contest or other direct attack that might be instituted; and mandamus is the proper method of obtaining possession of such office. *Brooke* v. *Widdicombe,* 39 Md. 386; *Magruder* v. *Swann,* 25 Md. 173; *Groome* v. *Gwinn,* 43 Md. 572.

The distinction between a contested election and a dispute about the legality of the election itself is clearly stated in *Magruder* v. *Swann.* We think the demurrer to the plea to the jurisdiction was properly sustained.

This brings us to the bills of exception, which are seven in number. The following questions were propounded by appellee and objections thereto sustained by the trial Court.

George Mallison, clerk of the City of Crisfield, was asked:

1. "Was or not a return made to you following the alleged election of June 5th, by the registration officer showing the registrants registered by him?"

2. "Did you post upon the door of your office a copy containing an alphabetical list prepared by the registration officer and returned by him to you in connection with the holding of an election on June 5th?"

3. "Do you know who the judges of election were at the election held on June 5th?"

4. "Did anyone other than Mr. Blackstone and Mr. Saltz tender to you fees and certificates of candidacy to be used on June 5th, 1918?"

5. "Did you accept the application of Mr. Blackstone and Saltz to become candidates when they first tendered their money?"

6. "Can you state whether the registration lists used on June 5th, 1918, were prepared under Chapter 163, Acts 1918, which showed the qualifications of electors?"

Fred N. Holland, after testifying that he was the registration officer, and one of the judges of election, was asked:

7. "Who were the other two judges appointed by Mayor Richardson?"

The sustaining by the Court of objections to the above questions constitute the seven bills of exception.

The correctness of the ruling of the lower Court on each of these objections depends upon whether the question was in reference to matters which the Court could properly inquire into in this proceeding, in view of the fact that a certificate of election had been issued to appellant; and this again depends upon whether such matters affected the *legality* of *holding* the election under the then existing conditions, as distinguished from *irregularities in the method of conducting* the election.

Under this test it seems clear that the lower Court was right in its ruling on the 1st, 2nd, 3rd, 4th, 5th and 7th exceptions, the matters therein inquired about not going to the *legality* of *holding* the election.

But we are unable to agree with the conclusion reached by the lower Court on the sixth exception. Section 58 of the Charter of Crisfield, as amended by Chapter 163 of Acts of 1918, is as follows:

"Sec. 58.  The male citizens of said city, of twenty-one years of age or over, who have resided in said city one year preceding any election, having the qualifications entitling them to vote at any State or county election therein, and all male citizens of like age of Somerset County, entitled to vote in any election district or precinct therein, outside of the City of Crisfield, and owning any freehold or leasehold property, for ninety-nine (99) years, renewable, within the limits of said city, for two years or more before any election in said city, and being duly registered as voters in said city,

shall elect by ballot on the first Wednesday in June,
1916, as already provided by law, a Mayor and three
Councilmen, as provided in the preceding section, and
biennially thereafter on the same day, Mayor and Coun-
cilmen sufficient to fill the places of those whose terms
have expired; and no person, not entitled to vote as
aforesaid and registered as herein provided, shall be
entitled to vote at any election for Mayor and Council
of Crisfield; said Mayor shall annually appoint one
person as officer of registration, whose duty it shall be
to enter in proper and convenient books, to be provided
by said Mayor and Council of said city, the names of
all persons applying for registration who are entitled
to vote, under the provisions of this section, in alpha-
betical order as in State registration books, and for the
purpose of ascertaining the facts, the said officer of
registration is hereby empowered to administer oaths
to applicants and witnesses, touching the qualifications
of applicants for city registration. Said officer of reg-
istration shall sit, with his official books, for registra-
tion of qualified applicants from eight o'clock A. M. to
five o'clock P. M., on the Wednesday and Thursday
preceding every municipal election; a right of chal-
lenge and of presentation of facts relating to qualifica-
tions, and a right of appeal from the decision of the
registration officer is hereby granted to any person or
persons aggrieved by the decision to the Mayor and
Council, which shall sit between the hours of two and
five o'clock P. M. on the Friday before the election to
hear such appeals, if any, and the evidence relative
thereto. Every applicant and challenger concerned in
said appeal or appeals shall be at the conclusion of this
registration duly notified by the registration officer of
the time and place of the said meeting of the Mayor
and Council, and their decision shall be final. Such
registration shall be essential to the right of voting
under the provisions of this Charter or the ordinances
made in pursuance of it. The Mayor and Council shall
give at least five days' notice of the time and place of

the sittings of the officer of registration by handbills posted in at least ten conspicuous places in said city or by advertisement in one or more city newspapers. The said registrar, as soon as his sittings are finished, shall forthwith return all books and other official papers and documents, together with an alphabetical list of persons registered or rejected, to the clerk of the Mayor and Council. Said clerk shall on same day put upon the door of the office of the Mayor and Council a copy of the alphabetical list of qualified registered voters and of those rejected as voters at the approaching election, for public inspection, and any person so registered may be challenged on the following day, although not challenged at the time of registration, before the Mayor and Council, provided notice thereof is given to the party whose qualifications are to be challenged at any time before twelve o'clock on said appeal day."

This act went into effect on the 10th day of April, 1918.

We held in the case of *Strange* v. *Levy*, 134 Md. 645, that Article XVI of the Constitution, known as the Referendum, does not apply to acts relating to towns and cities other than Baltimore City, and that such acts, although not emergency acts, can be made to take effect as of the date of their passage.

Consequently there was ample time to do all that was required by the Act above referred to before the 5th day of June, 1918. If, as alleged, there was no registration under the provisions of said Act, it may have been due to the belief that the Act could not go into effect until June 1st, not being an emergency act. But whether the omission was due to an honest mistake or to a wilful disregard of the law, the consequences are the same, much as they are to be regretted.

It is apparent that registration under the provisions of the Act was a condition precedent to the right to vote, and if there was no registration thereunder prior to June 5th, 1918, then no one was entitled to vote, and consequently the election attempted to be held on that day was a nullity.

Undoubtedly the rule is that courts will not, in a proceeding of this kind, go back of a certificate of election to inquire into irregularities in the manner of holding an election, but the question whether an election has been held under the authority of law can be inquired into; and in this case it cannot be said that an election was held under the authority of the Charter of the City of Crisfield if no one had qualified himself as a voter under the provisions of said Charter.

In *Sansbury* v. *Middleton,* 11 Md. 296, the question of the validity of the election was involved, and the Court refused the mandamus prayed for, although the petitioner had received his commission and duly qualified. See also *Magruder* v. *Swann, supra,* in which case, notwithstanding certificates were issued showing the result of the election, the Court inquired into the legality of holding the election.

The question in the sixth bill of exception seems to be in regard to the legal qualification of the citizens of Crisfield to vote at the election attempted to be held on June 5th, 1918, and the Court erred in sustaining the objection to it.

For this error in the ruling the judgment must be reversed.

*Judgment reversed and new trial awarded
with costs to appellant.*